**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

G. CLINTON MERRICK, JR.,

             Plaintiff,

v.

CHARLES SASSER,

             Defendant.

2:10-CV-807 JCM (VCF)

**ORDER**

Presently before the court is defendant Charles Sasser's ("Sasser") motion for summary judgment. (Doc. #37). Plaintiff G. Clinton Merrick, Jr. ("Merrick") filed an opposition. (Doc. #47). Sasser then filed a reply. (Doc. #55). Also before the court is Merrick's motion for summary judgment. (Doc. #40). Sasser filed an opposition. (Doc. #46). Merrick then filed a reply. (Doc. #54).

The court held a hearing on these motions on November 21, 2011, and ordered supplemental briefing. (Doc. #60). Merrick filed a supplemental brief on December 5, 2011. (Doc. #61). Sasser filed a response brief. (Doc. #62). Finally, Merrick filed a reply. (Doc. #63). The court then heard oral argument on the supplemental briefing. (Doc. #65).

**<u>Factual background</u>**

This case arises out of a dispute over compensation for legal services rendered by Sasser. Merrick retained Sasser in 1997, to bring a suit to collect disability insurance benefits from Paul Revere Co. and Unum Provident. The parties executed an employment agreement in which Merrick

James C. Mahan
U.S. District Judge

agreed to pay Sasser a 40% contingency fee on any recovery resulting from a lawsuit.

Negotiations between Sasser and the insurance companies were unsuccessful, and Sasser filed a lawsuit against the insurance companies on Merrick's behalf. This underlying insurance benefit case ("Paul Revere case") was assigned to this court. (*See Merrick v. Paul Revere Life Ins. Co.*, 2:00-cv-00731-JCM-RJJ). Sasser was admitted *pro hac vice* and associated Julie Mersch as local counsel. Sasser agreed to split his contingent fee with Mersch, and Merrick did not incur any additional fees as a result of Mersch's association.

Over the next three years, Sasser and Mersch engaged in discovery to prepare for the case. Sasser took or defended more than twenty depositions. In 2003, Sasser and Mersch, with Merrick's consent, associated Richard Friedman to serve as trial counsel. The three attorneys agreed to split the 40% contingent fee, and Merrick incurred no additional fees as a result of this agreement.

In late 2004, this court presided over a 10-day jury trial in the Paul Revere case. In January 2005, judgment was entered on a jury verdict in Merrick's favor for approximately $2 million in compensatory damages and $10 million in punitive damages. The defendant insurers appealed. Trial lawyer Friedman later testified that Sasser's contributions to the Paul Revere case were critical and that "we wouldn't have won had [Sasser] not done what he did."

In 2006, with Merrick's consent, Sasser, Mersch, and Friedman associated Thomas Hudson to handle the appeal. The attorneys agreed to adjust their respective shares of the 40% contingent fee as follows: Friedman 13.5%, Sasser 11.25%, Mersch 11.25%, and Hudson 4%. The Ninth Circuit affirmed the compensatory damages portion of the judgment but remanded for a retrial on punitive damages. Sasser received $268,741.53 in attorneys' fees, which represented his 11.25% of the 40% contingent fee.

Shortly before the punitive damages retrial, Merrick terminated Sasser. Merrick then entered into a joint venture agreement with his remaining attorneys, Mersch, Friedman, and Hudson. Under this agreement, each attorney continued to receive the same pro rata contingent fee share he or she received under the earlier agreement between Merrick and Sasser, as subsequently modified according to the lawyers' fee-split agreements. The joint venture agreement excluded Sasser from

**James C. Mahan**
**U.S. District Judge**

1    receiving any portion of the fees to be recovered in the future, but provided that Sasser's 11.25% pro

2    rata share of the 40% contingent fee would be held in Mersch's client trust account pending a final

3    resolution of the issue between Merrick and Sasser.

4          The 7-day jury trial on punitive damages in the Paul Revere case occurred in June 2008, and

5    Friedman again served as trial counsel.  Merrick obtained a judgment of over $50,000,000.  The

6    defendant insurers again appealed, and in May 2010, while the appeal was pending, Merrick reached

7    a confidential settlement agreement with the defendant insurers.

8          Friedman, Mersch, and Hudson have been paid their respective shares of the contingent fee

9    based on the final settlement amount.  Sasser has received no fees from the final punitive damages

10   final settlement amount.  The disputed legal fees, 11.25% of the settlement agreement, have been

11   placed in Mersch's trust account pending the outcome of this action.

12                                **Summary judgment standard**

13         Summary judgment is appropriate when, viewing the facts in the light most favorable to the

14   nonmoving party, there is no genuine issue of material fact which would preclude summary

15   judgment as a matter of law.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996); FED. R. CIV.

16   P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *T.W.*

17   *Elec. Serv.*, *Inc. v. Pacific Elec. Contractors Assn*., 809 F.2d 626, 630 (9th Cir.1987).  The purpose

18   of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there

19   is a genuine need for trial."  *Matsushita Elec*., 475 U.S. at 586; *International Union of Bricklayers*

20   *v. Martin Jaska, Inc*., 752 F.2d 1401, 1405 (9th Cir. 1985).

21         The moving party bears the burden of informing the court of the basis for its motion, together

22   with evidence demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v.*

23   *Catrett*, 477 U.S. 317, 323 (1986); *see also Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002)

24   (expressing the standard for authentication of evidence on a motion for summary judgment).  Once

25   the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party

26   fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

1  facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; F<small>ED</small>. R. C<small>IV</small>.

2  P. 56(c).

3  <u>**Discussion**</u>

4  There is no genuine issue of material fact that Sasser is entitled to compensation under

5  quantum meruit.  The reasonable value of Sasser's services is 11.25% of all of the recoveries in the

6  Paul Revere case.

7  Once an attorney working pursuant to a contingency fee agreement is discharged, the sole

8  measure of any attorneys' fees owed is quantum meruit.  *Covington v. Rhodes*, 38 S.E.2d 305, 308-

9  09 (1978); *see also Crockett & Myers, Ltd v. Napier, Fitzgerald & Kirby, LLP.*, 401 F. Supp. 2d

10  1120, 1124 (D. Nev. 2005).  Quantum meruit recovery is based on the amount "'that a party has

11  received from another which [would be] unjust for him to retain without paying for it.'" *Crockett*

12  *& Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232, 1238 (9th Cir. 2009) (quoting

13  *Thompson v. Herrmann*, 91 Nev. 63 (1975)).

14  Quantum meruit damages are determined by the reasonable value of the retained services.

15  *Crockett & Myers*, 583 F.3d at 1238.  The factors a court should consider in determining the

16  reasonable value of services are codified in Rule of Professional Conduct 1.5(a) in both Nevada and

17  North Carolina:

18      (1)    The time and labor required, the novelty and difficulty of the questions

19                 involved, and the skill requisite to perform the legal service properly

20      (2)    The likelihood, if apparent to the client, that the acceptance of the particular

21                 employment will preclude other employment by the lawyer

22      (3)    The fee customarily charged in the locality for similar legal services

23      (4)    The amount involved and the results obtained

24      (5)    The time limitations imposed by the client or the circumstances

25      (6)    The nature and length of the professional relationship with the client

26  . . .

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

1    (7)    The experience, reputation and ability of the lawyer or lawyers performing

2           the services

3    (8)    Whether the fee is fixed or contingent.

4    *See* Nevada Rule of Professional Conduct 1.5(a).  Finally, "[t]he amount of the agreed fee is certainly

5    a proper consideration upon a determination, in quantum meruit, of reasonable value."  *Gordon v.*

6    *Stewart*, 74 Nev. 115, 119 (1958) *overruled on other grounds by Argentena Consol. Min. Co. v.*

7    *Jolley Urga Wirth Woodbury & Standish*, 125 Nev. 527 (2009); *see also Fracasse v. Brent*, 494 P.2d

8    9, 14 (Cal. 1972) (stating "where the client executes a settlement obtained after much work by the

9    attorney, the factors involved in a determination of reasonableness would certainly justify a finding

10   that the entire fee was the reasonable value of the attorney's services"); State Bar of Nevada, Formal

11   Op. No. 18 (stating that an agreement setting the fee in the event of termination, if openly arrived

12   at and reasonable under the circumstances, would be given significant weight in the event of

13   termination and a subsequent fee dispute").

14          This court presided over the Paul Revere case and personally observed the performance of

15   Merrick's legal team at the 2004 and 2008 trials.  The court gives substantial weight to lead trial

16   counsel Friedman's praise of Sasser's contribution to this case.  Therefore, after considering all of

17   the factors in Rule of Professional Conduct 1.5(a), the court finds that the reasonable value of

18   Sasser's services is equal to 11.25% of all of the recoveries in this case.

19          Accordingly,

20          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Charles Sasser's

21   motion for summary judgment (doc. #37) be, and the same hereby is, GRANTED.

22          IT IS FURTHER ORDERED that plaintiff G. Clinton Merrick, Jr.'s motion for summary

23   judgment (doc. #40) be, and the same hereby is, DENIED.

24          IT IS FURTHER ORDERED that the funds currently being held in the trust account of Julie

25   Mersch shall continue to be held and safeguarded during any appeal of this order and up until the

26   final resolution of this case.

27

28

**James C. Mahan**
**U.S. District Judge**

IT IS FURTHER ORDERED that this order fully disposes of all issues in this case, and final judgment should be entered accordingly.

DATED March 20, 2012.

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge